# ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

```
Case #  : 07-90458-PBAD
Debtor.: ANDERSON   VS.   SCALZITTI
Judge..: PETER BOWIE
Chapter: AD
-----------------------------------------
Filed  : July 05, 2007  11:23:58
Deputy : ACROSBY
Receipt: 195005
Amount : $250.00
-----------------------------------------
```

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Joel Anderson<br>Concerned Citizens for Improving Government | August Scalzitti, Jr. |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| Michael J. Kumeta, 619-463-7811<br>4979 Clearview Way<br>La Mesa, CA 91941 | Craig E. Dyer, 858-268-9909<br>8745 Aero Drive, Suite 301<br>San Diego, CA 92123 |

**PARTY** (Check One Box Only)
- ☐ Debtor
- ■ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**PARTY** (Check One Box Only)
- ■ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Providing False Oaths in Violation of 11 U.S.C. § 727(a)(4)(A).
Property Concealed and Transferred in Violation of 11 U.S.C. § 727(a)(2)(A)&(B).

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- 11 - Recovery of money/property - § 542 turnover of property
- 12 - Recovery of money/property - § 547 preference
- 13 - Recovery of money/property - § 548 fraudulent transfer
- 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [✓] 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
- 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- 61 - Dischargeability - § 523(a)(5), domestic support
- 68 - Dischargeability - § 523(a)(6), willful and malicious injury
- 63 - Dischargeability - § 523(a)(8), student loan
- 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
- 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- 71 - Injunctive relief - reinstatement of stay
- 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- 01 - Determination of removed claim or cause

**Other**
- SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
- 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ■ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 203,666.95 |

**Other Relief Sought**
Attorney fees and costs via California Code of Civil Procedure § 425.16(c).

*Original*

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>August Scalzitti, Jr. | | BANKRUPTCY CASE NO.<br>07-01954-PB7 |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of California | DIVISIONAL OFFICE<br>N/A | NAME OF JUDGE<br>Hon. Peter W. Bowie |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*[signature]* | | |
| DATE<br>July 5, 2007 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Michael J. Kumeta, Esq., SBN 174866 | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Michael J. Kumeta, CSB No. 174866
4979 Clearview Way
La Mesa, CA 91941
(619)-463-7811 (Office)
(619)-463-7811 (Fax)

Attorney for Plaintiffs

Case # : 07-90458-PBAD
Debtor.: ANDERSON VS. SCALZITTI
Judge..: PETER BOWIE
Chapter: AD
-----------------------------------
Filed  : July 05, 2007  11:23:58
Deputy : ACROSBY
Receipt: 195005
Amount : $250.00
-----------------------------------

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AUGUST SCALZITTI, JR., <br> Debtor. <br><br> JOEL ANDERSON, an individual, and CONCERNED CITIZENS FOR IMPROVING GOVERNMENT, an unincorporated association, <br><br> Plaintiffs, <br><br> vs. <br><br> AUGUST SCALZITTI, JR., <br><br> Defendant. | CASE NO. 07-01954-PB7 <br><br> ADV. PROC. NO. <br><br> COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR |

### JURISDICTION AND VENUE

1. Subject matter jurisdiction exists via 28 U.S.C. §§ 1334 and 157.

2. Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding via 28 U.S.C. § 157(b)(2)(J).

### PARTIES

4. Plaintiffs Joel Anderson, an individual, and Concerned Citizens for Improving Government, an unincorporated association, reside in San Diego County.

5. Defendant debtor, August Scalzitti, Jr. a.k.a. August Scalzitti a.k.a. Augie Scalzitti, is an individual residing in San Diego County.

*Original*

## COUNT I

### (Providing False Oaths in Violation of 11 U.S.C. § 727(a)(4)(A))

6. Plaintiffs incorporate by reference the allegations of paragraphs 1-5.

7. This is an adversary proceeding objecting to discharge of the debtor via Bankruptcy Rules 4004(d) and 7001(4) and 11 U.S.C. § 727(a).

8. Plaintiffs are judgment creditors of the debtor who hold claims that are partly secured by real and personal property and partly unsecured.

9. On April 16, 2007, a California court ruled that the purported separate property agreement between debtor and his wife was legally insufficient to transmute community property earnings into separate property. Hence, debtor has a community property interest in his wife's real estate, bank accounts, and other property.

10. On April 20, 2007, debtor filed a voluntary petition via Chapter 7 of the United States Bankruptcy Code.

11. On April 20, 2007, defendant signed a bankruptcy petition and declared, under penalty of perjury, that the information contained in it was true and correct.

12. On April 20, 2007, defendant signed a Declaration Concerning Debtor's Schedules and declared, under penalty of perjury, that the information contained in all schedules and in the summary of schedules was true and correct.

13. On April 20, 2007, defendant signed a Statement of Financial Affairs and declared, under penalty of perjury, that the information contained in it was true and correct.

14. On April 20, 2007, defendant read and signed a Section 342(b) Notice advising him that "[a] person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both."

15. On April 20, 2007, defendant signed a Verification of List of Creditors and declared, under penalty of perjury, that the information contained in it was true and correct.

16. In his bankruptcy proceeding, defendant knowingly and fraudulently made the following false oaths and omissions:

A. On Form B1, debtor identifies his name as August Scalzitti a.k.a. Augie Scalzitti. In truth, his full name is August Scalzitti, Jr.

B. On Form B1, debtor estimated that there would be no funds available for distribution to creditors, even though the debtor knows that the County Sheriff's office is holding more than $ 6,700 of his assets, levied on behalf of plaintiffs.

C. On Form B1, debtor estimates his assets as worth from $0 to $10,000. In truth, his assets are worth, at minimum, between $ 10,000 and $ 100,000.

D. On Schedule A, debtor declares that he has no community property interest in two properties owned by his wife. In truth, he has a community property interest in both properties. Debtor knew that a state court judge ruled his purported separate property agreement insufficient to transmute his wife's earnings into her separate property. Thus, debtor has a community property interest in both properties to the extent that her earnings, or his, paid down either mortgage. Yet, debtor failed to list his community property interest in this real estate or its estimated value.

E. On Schedule B, debtor declares he has no community property interest in bank accounts held in his wife's name. In truth, he has a community property interest in all accounts at any financial institution in which his wife has deposited her earnings. Debtor knew that a state court judge ruled his purported separate property agreement insufficient to transmute his wife's earnings into her separate property. Yet, debtor failed to list his community property interest in banks and other financial institutions held in his wife's name or the amount of money contained in them.

F. On Schedules B and C, the debtor declares that he owns a 1996 Toyota truck worth $ 2,000 and he claims a full exemption for its value. It is worth at least double the declared value. The Kelly Blue Book lists its private sale market value, in only fair condition, as $ 4,810 and its wholesale value as $ 3,365. Debtor provided a false market value so that he could fraudulently exempt its total value from the estate.

3

G. On Schedule B, debtor failed to declare a second vehicle owned by him, a 1961 Ford Econoline van.

H. On Schedule C, debtor failed to include a homestead exemption his wife placed on debtor's residence just nine days before he declared bankruptcy. Because the homestead exemption impacts the equity available to pay off creditors, the debtor should have listed this exemption in Schedule C. Of course, if debtor truly believed that he had no community property interest in the home, as he stated in Schedule A, his wife had no need to record this homestead exemption prior to his bankruptcy. This conduct establishes fraudulent intent by both the debtor and his wife.

I. On Schedule D, the debtor claims that no creditors hold secured claims in his bankruptcy case. Instead, on Schedule F, the debtor lists plaintiffs as unsecured creditors. The truth is that plaintiffs hold a number of liens against debtor's real and personal property interests:

(1) On July 3, 2006, plaintiffs filed an Abstract of Judgment. This created a lien on all real property interests held by the debtor, including community property interests in his wife's real property. This lien is a matter of public record.

(2) On December 22, 2006, plaintiffs served debtor with an order to appear for a debtor's examination. This created a one-year lien on all personal property owned by the debtor, including his vehicles and his community property interest in bank accounts and other financial accounts held in his wife's name.

(3) On or about February 21, 2007, the San Diego County Sheriff's office served and executed a wage garnishment upon debtor's wages. This created a one-year lien on wages taken into possession by the San Diego County Sheriff's office.

(4) On April 3, 2007, plaintiffs served and executed levies upon three bank accounts in the name of debtor's wife. This created a one-year lien on all community property monies held in these three accounts.

//////

//////

4

J.  On Schedule F, debtor asserts that plaintiffs' claim totals $102,000.00. A simple mathematical computation establishes that the judgment amount, with interest to the date of the bankruptcy filing, is actually $ 106,215.61.

K.  On Schedule F, debtor failed to list attorney fees and costs accrued since the judgment. On April 6, 2007, just two weeks before filing bankruptcy, the debtor attended a fee motion hearing where a state court issued a tentative ruling awarding plaintiffs $ 70,578.59 in fees. The only reason that the court did not issue a final ruling is because the debtor purposely misled the court into believing that he had just retained an attorney to defend him in the fee motion when, in reality, debtor had retained a lawyer to file bankruptcy.

The Bankruptcy Code defines a "claim" as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Debtor failed to list this claim although he was in court, and addressed the judge, when the court issued its tentative ruling establishing this claim.

L.  On Schedule F, debtor also failed to list attorney fees and costs incurred since plaintiffs submitted their last fee motion to the state court. Although debtor would not have known the amount accrued, he did know that plaintiffs had incurred a substantial amount of attorney fees and costs since March 8, 2007, the date identified in plaintiffs' motion papers as the cutoff date for the requested fee award discussed in Section K. But debtor failed to list this claim, which totals $ 26,872.75.

M.  On Schedule F and on the Verification of List of Creditors, the debtor failed to list all other unsecured creditors, including Cox Cable, Cingular Telephone, AT&T Telephone, and Farmers Insurance Group. The debtor has current accounts with these creditors, but failed to list them. The debtor also failed to list his wife.

N.  On Schedule I, the debtor failed to list income that he receives from his barbering activity. Debtor admitted, during a debtor's examination, that he receives income from part-time barbering activity, being paid by one or two clients per month.

O. On Schedule I, the debtor failed to list income that he receives from his property management activities. Over the past three years, debtor has filed a number of unlawful detainer actions in which he claimed to be the agent or property manager for several parcels of real estate. While debtor denies being paid for this work, it is not realistic to believe that he received no income from these activities.

P. In his Statement of Financial Affairs, item 3.a., debtor failed to list his wife as a creditor who received payments from him of more than $600 within ninety days before the filing of debtor's bankruptcy petition. The debtor has an agreement by which he pays his wife $ 1,000 per month, plus additional sums of money.

Q. In his Statement of Financial Affairs, item 3.c., debtor failed to list his wife as an insider creditor who received payments from him within one year before he filed his petition. The debtor has an agreement by which he pays his wife $ 1,000 per month, plus additional sums of money. For example, his check register shows payments to his wife of over $ 14,000 in 2006. Hence, the debtor failed to list insider transactions totaling more than $ 12,000 over the past year.

R. In his Statement of Financial Affairs, item 3.c., debtor failed to list the sum of $ 2,000 that he claims to have borrowed, and repaid, when he purchased his 1996 Toyota pickup truck less than one year ago. Although debtor claimed that he could not remember from whom he borrowed the money, he did claim that the debt had been repaid to a close friend or relative from whom he had borrowed the money.

S. In his Statement of Financial Affairs, item 7, debtor failed to list the gift made to his step-daughter of a 1985 Toyota pickup truck within one year before he filed his bankruptcy petition. Its market value exceeded both $ 200 and $ 600.

T. In his Statement of Financial Affairs, item 10, debtor failed to list the sale and transfer of several guitars, sold for between $300 and $400 each, within two years before the debtor filed his bankruptcy petition.

U. In his Statement of Financial Affairs, item 16, debtor failed to list his current wife, and his former wife, both of whom resided with debtor in California.

6

V. Even if the purported separate property agreement was valid, the debtor should have included, in Schedule B, bank accounts in his wife's name used by him. Each month debtor's earnings are directly deposited into his checking account. To thwart creditors from levying on his bank account, within days he drafts checks to his wife and places most of his money into her checking accounts. She then pays all his monthly bills, all of which appear in his name, by writing checks from her account. These debts include Cox Cable, AT&T, Cingular Wireless, and his auto insurance. It also includes food and gasoline expenses. His check register shows that in 2004, 2005, and 2006, he never paid any of these personal bills from his own checking account. In sum, he transfers title in his money to his wife each month but continues to exercise dominion over it because his bills are paid from it. Hence, the debtor held an equitable interest in any of his money held in his wife's accounts at the time that he filed his bankruptcy petition and it was reportable on Schedule B.

W. On Schedule B, the debtor listed three bank accounts held in his wife's name only because plaintiffs located, and levied upon, them prior to the bankruptcy. Plaintiffs believe that debtor has a community property interest in other accounts, not disclosed on Schedule B, held in his wife's name located at banks and other financial institutions. Yet, the debtor failed to disclose these accounts, his community property interest in money contained in them, or the amount of money contained in them.

17. On May 16 and June 20, 2007, the debtor reconfirmed these false oaths at the creditors' meetings, establishing that the false oaths provided in the bankruptcy petition, schedules, and statements were not simply mistakes or oversights.

18. Providing false oaths at a creditors' meeting is a separate and distinct ground for denying a discharge via 11 U.S.C. § 727(a)(4)(A).

19. The statements cited above, which the debtor made or omitted in his bankruptcy petition, schedules, and statements and at the creditor's meeting, were false, made under oath, made with the knowledge that they were false, made with fraudulent intent, and materially related to debtor's bankruptcy case.

## COUNT II

### (Property Concealed and Transferred in Violation of 11 U.S.C. § 727(a)(2)(A)&(B))

20. Plaintiffs incorporate by reference the allegations of paragraphs 1-19.

21. Debtor has a past history of bank fraud, including mortgaging a house that he did not own, submitting a fake lease agreement to a bank, and submitting fraudulent loan applications to a bank. On December 29, 1992, Cuyamaca Bank filed suit against Scalzitti for, *inter alia*, fraud. Cuyamaca Bank v. Scalzitti, et al., San Diego Superior Court Case No. EC6425.

22. On September 16, 1994, the state court entered a judgment of fraud against the debtor in the sum of $ 470,682. The debtor promptly filed a Chapter 7 bankruptcy proceeding. SDC Case No. 94-06335-B7. The bank successfully filed an adversary proceeding in which the bankruptcy court found the judgment non-dischargeable because of fraud. SDC Adv. Proc. No. 94-90638-B7. On April 25, 1995, the bankruptcy court filed a judgment to that effect.

23. To minimize the effects of the fraud judgment, on May 1, 1997, debtor filed a Chapter 13 case that the court later dismissed. SDC Case No. 97-05662-B13.

24. In summary, the debtor was embroiled in the fraud lawsuit from 1992 to 1994, involved in bankruptcy actions until September 18, 1997, and for the next ten years (from September 1994) successfully eluded the $ 470,682 money judgment.

25. The debtor's actions since entry of that judgment – in evading creditors, concealing assets, and engaging in fraudulent conveyances – have impacted the plaintiffs' ability to enforce the judgment in this case. These actions also demonstrate an ongoing willingness, by the debtor and his wife, to engage in fraudulent activity.

26. On March 7, 1997, in response to the non-dischargeable judgment and the inability to minimize its impact under Chapter 13, debtor and his wife executed a purported separate property agreement to conceal debtor's assets from his creditors. The debtor has admitted that he entered into this purported postnuptial agreement as a direct result of the Cuyamaca Bank judgment.

27. On October 26, 2005, the state court entered a judgment of dismissal, finding that the plaintiffs were the victims of a SLAPP-suit filed by the debtor.

28. In keeping with their past history of fraud and concealment, on January 19, 2006, one day before the state court heard a fee motion in which plaintiffs sought a six-figure fee award, debtor and his wife executed a second purported postnuptial agreement. The next day, on January 20th, the court granted a $ 95,208 fee award.

29. On April 16, 2007, the state court ruled that these purported separate property agreements were legally insufficient to transmute community property earnings into separate property. Hence, the debtor knows that he has a community property interest in his wife's real estate, bank accounts, and other property.

30. Over the past ten years, including the year before the filing of his recent bankruptcy petition, debtor used these sham separate property agreements, on an ongoing and continuous basis, to conceal his community property interest in his wife's real estate holdings and in multiple financial accounts held in her name. This ongoing concealment continued within the year before the debtor filed his petition.

31. After the debtor filed his bankruptcy petition, the debtor continued to conceal his community property interest in his wife's real property holdings, multiple bank accounts held in her name, and other property.

32. Each month, debtor's earnings are directly deposited into his checking account. Within days, to thwart creditors from levying on his bank account, he drafts checks to his wife and places most of his money into her checking accounts. She then pays all his monthly bills, all of which appear in his name, by writing checks from her account. These debts include Cox Cable, AT&T, Cingular Wireless, and his auto insurance. It also includes food and gasoline expenses. His check register shows that that in 2004, 2005, and 2006, he never paid any of these personal bills from his own checking account. In sum, debtor engages in these transfers and concealments to hinder and delay his creditors, both within the past year and continuing after the filing date of his bankruptcy petition.

9

33.    When he filed his bankruptcy petition, the debtor concealed payments totaling at least $ 1,000 per month made to his wife over the past year.

34.    When he filed his bankruptcy petition, the debtor concealed a loan repayment of $ 2,000 – money that he borrowed from, and repaid to, a close friend or relative when he bought his 1996 Toyota pickup truck less than one year ago.

35.    When he filed his bankruptcy petition, debtor concealed a gift-transfer of a 1985 Toyota pickup truck to his step-daughter and the sale of two guitars, all of which occurred within one year before he filed his petition.

36.    When he filed his bankruptcy petition, debtor concealed income from his barbering activities and income from his property management activities earned within the past year.

37.    When he filed his bankruptcy petition, debtor concealed his ownership of a 1961 Ford Econoline van.

38.    The debtor, with intent to hinder, delay, or defraud his creditors, has concealed or transferred, or has permitted his wife to conceal or transfer, property of the debtor, within one year before the date of the bankruptcy petition.

39.    The debtor, with intent to hinder, delay, or defraud his creditors, has concealed or transferred, or has permitted his wife to conceal or transfer, property of the bankruptcy estate, after the filing date of the bankruptcy petition.

## COUNT III

(Attorney Fees and Costs via California Code of Civil Procedure § 425.16(c))

40.    Plaintiffs incorporate by reference the allegations of paragraphs 1-39.

41.    Pursuant to Bankruptcy Rule 7008(b), plaintiffs claim attorney fees and costs, if the Court denies debtor a discharge.  Plaintiffs are entitled, under state law, to a fee award as successful SLAPP-suit litigants enforcing a money judgment.

42.    Plaintiffs claim the right to sanctions, as appropriate, stemming from the actions described in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

1. Enter a judgment denying debtor's discharge;
2. Award attorney fees, interest, and costs;
3. Award appropriate sanctions, if warranted;
4. Grant such other relief as the Court deems just and proper.

DATED: July 5, 2007          Respectfully Submitted,

By: _____

Michael J. Kumeta, Attorney for Plaintiffs